UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
MARCIA L. CARONIA,
LINDA McAULEY,
ARLENE FELDMAN,

                  Plaintiffs,

-against-

PHILIP MORRIS USA, INC.

                  Defendant.
------------------------------------------------------------x

**NOT FOR PUBLICATION
MEMORANDUM & ORDER**
06-CV-224 (CBA) (SMG)

AMON, United States District Judge.

Marcia L. Caronia, Linda McAuley, and Arlene Feldman (collectively, "plaintiffs") filed this class action lawsuit, pursuant to Federal Rule of Civil Procedure 23, against defendant Philip Morris USA, Inc. ("PMUSA") on behalf of New York state residents who 1) are fifty years or older; 2) have smoked Marlboro brand cigarettes for twenty pack-years or more; 3) currently smoke Marlboro cigarettes, or quit smoking them within one year prior to the date of the commencement of this lawsuit; 4) have smoked Marlboro cigarettes within New York state; and 5) are not presently suffering from lung cancer or under active investigation by a physician for the disease. Plaintiffs allege three causes of action: 1) strict liability due to the defective design of Marlboro cigarettes; 2) negligent design and testing of Marlboro cigarettes; and 3) breach of implied warranty. Plaintiffs seek class certification pursuant to Fed. R. Civ. P. 23(b), or alternatively, certification of an issues class under Fed. R. Civ. P. 23(c)(4)(A) and request relief in the form of a court-supervised medical monitoring program, funded by PMUSA, to provide Low Dose CT ("LDCT") scans for the early detection of lung cancer to class members. Plaintiffs argue that such LDCT scans are capable of identifying lung cancer at a far earlier stage than other available pulmonary screening methods.

1

Presently before the Court are two motions: plaintiff's motion for class certification and defendant's motion for summary judgment. For the reasons that follow, PMUSA's motion for summary judgment is granted in part and denied in part. Plaintiffs' strict liability and negligence claims are dismissed. Before reaching plaintiffs' motion for class certification, the Court directs that the parties address two issues: 1) whether plaintiffs' knowledge of the risks associated with tobacco use defeats their implied warranty claims, and 2) whether the New York Court of Appeals would recognize an independent cause of action for medical monitoring, an essential element of which would be the availability of a remedy. The Court therefore requests supplementary briefing limited solely to these two issues, and stays decision on the motion for class certification in the interim.

I.  **Summary and Background**

Plaintiff Arlene Feldman was seventy-eight years old at the time this motion was filed and began smoking Chesterfield brand cigarettes in 1944. Def. 56.1 Stmt. at ¶¶ 5-6[1]; Pl. 56.1 Stmt. at ¶¶ 5-6[2]. She estimates she has smoked about a pack a day for the last fifty-five years and currently smokes about a pack-and-a-half of cigarettes per day. Def. 56.1 Stmt. at ¶¶ 10, 17; Pl. 56.1 Stmt. at ¶¶ 10, 17. Plaintiff Linda McAuley was fifty-eight years old at the time this motion was filed and began smoking regularly when she was eighteen. Def. 56.1 Stmt. at ¶¶ 19-21; Pl. 56.1 Stmt. at ¶¶ 19-21. Except for a four-year period during which she was incarcerated, Ms. McAuley has smoked between 1 and 2 ½ packs of Marlboros per day for the last forty years. Def. 56.1 Stmt. at ¶ 23; Pl. 56.1 Stmt. at ¶ 23. Plaintiff Marcia Caronia began smoking in 1970 while she was in high school and smoked about one pack of cigarettes per day from 1972 to 1984. Def. 56.1 Stmt. at ¶¶ 29-30; Pl. 56.1 Stmt. at ¶¶ 29-30. Between 1984 and 1987, she

---

[1] "Def. 56.1 Stmt." refers to "Philip Morris USA Inc.'s Statement Pursuant to Local Rule 56.1" submitted on May 1, 2007.
[2] "Pl. 56.1 Stmt." refers to "Plaintiffs' Statement Pursuant to Local Rule 56.1(b)" submitted on May 22, 2007.

reduced her smoking to half a pack of cigarettes per day, but by 1990 she was smoking about one pack of Marlboros per day and currently smokes over two packs per day. Def. 56.1 Stmt. at ¶¶ 28, 33-34; Pl. 56.1 Stmt. at ¶¶ 28, 33-34. Accordingly, each named plaintiff in this action had reached twenty pack-years of Marlboro use by, at the latest, 1996.[3]

Plaintiffs argue that PMUSA improperly designed, manufactured, marketed and sold its Marlboro cigarettes to deliver "excessive and unreasonably dangerous quantities of carcinogens," and that at all times PMUSA "possessed feasible alternative designs which would have markedly reduced the cancer causing content of Marlboro cigarettes." Phillips Aff. at ¶¶ 18-19.[4] Plaintiffs argue that they seek purely equitable relief, and ask this Court to compel PMUSA to fund a court-supervised LDCT surveillance program for the early detection of lung cancer.

According to plaintiffs, LDCT scans represent a "safe, efficacious, and inexpensive" technique that is capable of identifying lung cancer at an early, curable stage, unlike prior available lung cancer treatment. Id. at ¶ 4. Plaintiffs submit that lung cancer is the leading cause of cancer death in the United States and in the State of New York, and that approximately 90% of these cancer deaths are caused by smoking cigarettes. Id. at ¶¶ 5-6. Plaintiffs allege that lung cancer is usually curable when identified at an early stage. However, according to plaintiffs, traditional forms of medical surveillance, such as chest x-rays or sputum cytology, are poor tools for identifying early stage lung cancers. Id. at ¶¶ 7, 10. LDCT scans can allegedly identify tiny Stage I cancers which would otherwise have remained hidden until they progressed to an advanced, largely untreatable stage.

---

[3] A "pack-year" means the number of packs of cigarettes smoked per day multiplied by the number of years the person has smoked. Thus, a person who smoked 20 cigarettes per day for ten years would have smoked for ten pack-years, whereas a person who smokes only 10 cigarettes per day for the same amount of time would have smoked for only five pack-years.
[4] References to "Philips Aff." refer to the "Affidavit of Steven J. Philips in Support of Plaintiffs' Motion Pursuant to Rule 23 F.R.C.P. Seeking Class Certification," submitted on April 2, 2007.

3

Plaintiffs allege that the requested relief of a court-supervised screening program funded by PMUSA sounds solely in equity. They contend that the medical surveillance remedy is a "program" rather than a "procedure," and that a proper program, in addition to performing LDCT scans, would "reach out to class members, advise them of the availability of the screening program, obtain informed consent, evaluate their suitability for LDCT screening. . . interpret films, report results, and then repeat the process at appropriate intervals." Id. at ¶ 33. Plaintiffs allege that this remedy is particularly necessary because LDCT screening is not presently available as a paid benefit in most public or private health insurance programs, id. at ¶ 16, and argue that payment of a lump sum "would be useless." Pl. Mot. for Class Cert.[5] at 17. Thus, although plaintiffs' remedy requires nothing more from PMUSA beyond the payment of money to fund the program, they contend the requested remedy cannot be considered money damages.

## II. Defendant's Motion for Summary Judgment

PMUSA moves for summary judgment on both statute of limitations and causation grounds. Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 23 (1986); Belfi v. Prendergast, 191 F.3d 129, 135 (2d Cir. 1999). The Court's function is not to resolve disputed issues of fact but only to determine whether there is a genuine issue to be tried. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The court is required to view the evidence in the light most favorable to the nonmoving party. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). Nevertheless, the non-

---

[5] "Pl. Mot. for Class Cert." refers to the "Memorandum of Law in Support of Plaintiff's Motion Seeking Class Certification Pursuant to rule 23 of the Federal Rules of Civil Procedure," submitted on April 2, 2007.

moving party cannot rest on mere allegations or denials but must instead set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Nat'l Westminster Bank USA v. Ross, 676 F. Supp. 48, 51 (S.D.N.Y. 1987) (Speculation, conclusory allegations, and mere denials are not enough to raise genuine issues of fact.). No genuine issue exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249-50 (citations omitted).

### A. Strict Products Liability and Negligence Claims

PMUSA first argues that plaintiffs' strict liability and negligence claims are barred by the three year limitations period set forth in § 214-c(2) of New York's Civil Practice Law & Rules ("CPLR"), which provides:

> [T]he three year period within which an action to recover damages for personal injury or injury to property caused by the latent effects of exposure to any substance or combination of substances, in any form, upon or within property, must be commenced shall be computed from the date of discovery of the injury by the plaintiff or from the date when through the exercise of reasonable diligence such injury should have been discovered by the plaintiff, whichever is earlier.

(Def. Mem. in Supp. at 3)

§ 214-c(2) only applies to personal injury or property actions "to recover damages". PMUSA characterizes plaintiffs' request as a legal claim for medical expenses. Plaintiffs insist their requested remedy is equitable or injunctive and that § 214-c(2) is therefore inapplicable. See Jensen v. Gen. Elec. Co., 82 N.Y.2d 77, 89-90 (1993) ("CPLR 214-c(2) applies by its terms only to actions to 'recover damages.' It does not then affect or purport to affect the availability to a party of seeking injunctive relief.") Plaintiffs instead contend that CPLR 213(1), the equitable six-year "residuary" statute of limitations, governing actions "for which no limitation is specifically prescribed by law" applies to their claims. 213(1) generally applies to actions

5

seeking equitable relief, including injunctive relief. See, e.g. 2004 Commentary CPLR 213(1); Kaufman v. Cohen, 307 A.D.2d 113, 118-19, 760 N.Y.S.2d 157, 164 (1st Dep't 2003); Rahabi v. Morrison, 81 A.D.2d 434, 439, 440 N.Y.S.2d 941 (2d Dep't 1981). Plaintiffs further insist that their claims accrued only in the year prior to the filing of the complaint when LDCT scanning became an available and accepted screening tool for lung cancer. See 2/7/08 Tr.[6] at 165-166.

Plaintiffs' strict liability and negligence claims are barred under either statute. CPLR 214-c(2), the latent disease statute of limitations, begins to run upon the "date of discovery" of the injury and would apply if the Court determines that plaintiffs have asserted a claim for damages. Jensen, 82 N.Y.2d at 90-91. Both parties agree that the injury in this action is the increased risk of developing lung cancer as a result of smoking Marlboro cigarettes for twenty pack-years. See Pl. 56.1 Stmt. at ¶ 2; Def. 56.1 Stmt. at ¶ 2. Because the testimony of each plaintiff establishes awareness of an increased risk of cancer well before January 19, 2003, the action would be time-barred under 214-c(2). Unlike actions governed by 214-c(2), the six-year statute of limitations under 213(1) begins to run pursuant to the common-law accrual method, not a date-of-discovery rule. Jensen v. Gen. Elec. Co., 82 N.Y.2d at 90-91. As a general rule, "accrual occurs when the claim becomes enforceable, i.e., when all elements of the tort can be truthfully alleged in a complaint." Snyder v. Town Insulation, Inc., 81 N.Y.2d 429, 432-33 (1993); see also Aetna Life and Cas. Co. v. Nelson, 67 N.Y.2d 169, 176, 501 N.Y.S.2d 313 (1986) (statute of limitations begins to run "when all of the facts necessary to the cause of action have occurred so that the party would be entitled to obtain relief in court."). As such, the Court must first consider the elements of plaintiffs' strict liability and negligence causes of action.

In New York, a prima facie case in strict products liability based on a theory of design defect requires a plaintiff to establish that "the manufacturer breached its duty to market safe

---

[6] References to "2/7/08 Tr." refer to the transcript of oral argument held on February 7, 2008.

6

products when it marketed a product designed so that it was not reasonably safe and that the defective design was a substantial factor in causing plaintiff's injury." Voss v. Black & Decker Mfg. Co., 59 N.Y.2d 102, 107, 450 N.E.2d 204, 208, 463 N.Y.S.2d 398, 402 (1983). A plaintiff must therefore be able to show that "the defectively designed product caused his injury and that the defect was the proximate cause of the injury." Id. at 109, 450 N.E.2d at 209, 463 N.Y.S.2d at 403. A claim based on negligent design requires a plaintiff to establish that the manufacturer failed to exercise "that degree of care in his plan or design so as to avoid any unreasonable risk of harm to anyone who is likely to be exposed to the danger when the product is used in the manner for which the product was intended." Micallef v. Miehle Co., Div. of Miehle-Goss Dexter, Inc., 39 N.Y.2d 376, 385, 348 N.E.2d 571, 384 N.Y.S.2d 115 (1976).

A plaintiff can only recover in negligence where 1) the defendant owed the plaintiff a cognizable duty of care, 2) the defendant failed to exercise that duty and 3) the plaintiff suffered injury as a proximate result of that failure. See, e.g., Akins v. Glen Falls City School Dist., 53 N.Y.2d 325, 333, 424 N.E.2d 531 (1981); Becker v. Schwartz, 46 N.Y.2d 401, 410, 386 N.E.2d 807 (1978); Palsgraf v. Long Island R. Co., 248 N.Y. 339, 162 N.E. 99 (1928).

Plaintiffs agree that a claim accrues for statute of limitations purposes when all of the elements necessary to state a claim can be made in good faith, but confusingly argue that "the last event that had to occur before plaintiffs could honestly assert their claim for surveillance was the availability of a remedy, since to demand surveillance when none existed would have been pointless[.]" Pl. Resp. Mem. at 20-21.[7] However, as is readily apparent from a review of the elements of both causes of action, neither claim is dependent upon the availability of a specific remedy. Plaintiffs' argument thus cannot be reconciled with the claims they have actually

---

[7] "Pl. Resp. Mem." refers to "Memorandum of Law in Opposition to Defendant Philip Morris USA, Inc.'s Motion for Summary Judgment on Statute of Limitations or Proximate Causation Grounds," submitted on May 22, 2007.

brought in this court. Plaintiffs have not, in fact, brought a "claim" for medical surveillance—they have brought strict liability and negligent design defect claims. Plaintiffs allege that LDCT screening is a new technology and that "the data establishing its efficacy which led to its acceptance in the medical community was developed within three years of the date that this lawsuit was filed" and only "matured within one year" prior to the filing of this action. See Pl.'s 56.1 Stmt. at ¶¶ 59-61.[8] But the availability of this remedy is irrelevant to the accrual of plaintiff's claim. See Williams v. Walsh, 558 F.2d 667, 671 (2d Cir. 1977) ("[T]he cause of action is something distinct from the remedy or the relief sought.") (quoting Dennison v. Payne, 293 F. 333, 344 (2d Cir. 1923) (internal quotations and alterations omitted). Plaintiffs have cited to no case that links the statute of limitations to the existence of a particular remedy. Rather, the strict liability and negligence claims accrue, at latest, at the time of the injury caused by PMUSA's allegedly defective product.

As previously noted, plaintiffs agree that the injury suffered in this case consists of the increased risk of lung cancer caused by 20 pack-years of smoking Marlboro cigarettes. As plaintiffs' counsel acknowledged at oral argument:

> MR. BLOCK: Even if somebody smokes 30 years of an American Tobacco product before 20 years of Marlboros, the 20 years of Marlboros gives them a substantially increased risk of lung cancer; and that's exactly it, your Honor.
>
> THE COURT: So the elements of your claim are that it was defectively designed and that defective design was the proximate cause of an injury, that injury being an increased risk of getting lung cancer.
>
> MR. BLOCK: That's absolutely right, your Honor.

(2/7/08 Tr. at 50:19-51:5).

---

[8] PMUSA disputes Plaintiff's characterization of the novelty of the LDCT remedy. For purposes of this motion, the Court assumes, without decision, that LDCT screening only became available during the past four years prior to the filing of the complaint.

8

Here it is undisputed that each of the named plaintiffs in this action reached twenty pack-years of smoking by the mid 1990s, well outside of the six-year statute of limitations available under 213(1). Plaintiff Arlene Feldman, by her own testimony, estimates she smoked about a pack a day for fifty-five years and her medical records indicate a forty-five or a forty pack-year smoking history by 1992. Def.'s 56.1 Stmt. at ¶¶ 9-10; Pl.'s 56.1 Stmt. at ¶¶ 9-10. Plaintiff Linda McAuley smoked one pack per day from 1966-1971, after which she smoked two packs per day. Def.'s 56.1 Stmt. at ¶¶ 21-22; Pl.'s 56.1 Stmt. at ¶¶ 9-10. Accordingly, Ms. McAuley had reach a twenty pack-year threshold by approximately 1980. Plaintiff Marcia Caronia smoked approximately one pack per day for twelve years as of 1984. She smoked a half-pack per day for the next three years, quit for a time, but has smoked approximately a pack per day since 1990. Def.'s 56.1 Stmt. at ¶¶ 30, 33-34; Pl.'s 56.1 Stmt. at ¶¶ 30, 33-34. Ms. Caronia had therefore reached twenty pack-years of smoking by, at latest, 1996. Generously assuming that none of the named plaintiffs could have acquired an increased risk of lung cancer with fewer than twenty pack-years of smoking, plaintiffs are barred from bringing strict liability and negligent design claims under 213(1). As of 1996, each Plaintiff could have asserted claims that PMUSA's allegedly defective cigarette design proximately caused an increased risk of cancer. Although these plaintiffs may not have been able to seek an LDCT screening program at that time, other remedies might have been available, such as generalized medical monitoring expenses. See, e.g., Dangler v. Whitestown, 241 A.D. 290, 293, 672 NY.S.2d 188 (4th Dep't 1998) (upon finding of liability against landfill operator for negligence, plaintiffs were permitted as a matter of law to seek damages for emotional harm and medical monitoring expenses). The issue is not whether plaintiffs could have asserted the best conceivable remedy, but whether they could have obtained a remedy of any kind on the facts asserted.

The Court must also address plaintiffs' argument that "continuing harmful exposure" to hazardous substances in cigarettes, where exposure is both within and outside the applicable statutory period, allows plaintiffs to recover for the total, cumulative injury suffered.[9] See Pl.'s Resp. Mem. at 9-11. This argument derives from a line of cases first established in Pieczonka v. Pullman, 89 F.2d 353 (2d Circ. 1937), and adopted by the New York Court of Appeals in Sadowski v. Long Island R. Co., 292 N.Y. 448, 55 N.E.2d 497 (1944). In Pieczonka, plaintiff's decedent contracted silicosis as a result of his work as a sandblaster renovating Pullman train cars, where he had worked since 1913. The decedent commenced an action against his employer for his injuries on July 5, 1932, nearly a year after he had ceased working. He died in 1933 and the administratrix of his estate commenced a timely new action on his behalf. Under then applicable New York law, the statute of limitations for a latent disease such as silicosis began to run at the time the date of exposure to a toxic substance, not upon discovery of the disease. See Schmidt v. Merchants Despatch Transp. Co., 270 N.Y. 287, 200 N.E. 824 (1936). Writing for the Second Circuit, Judge Learned Hand held that an action could nonetheless lie for injuries occurring within the last three years before filing the action, even if recovery was barred for all earlier periods:

> The employer got no prescriptive right to contaminate his workmen's lungs. Therefore the fact that the deceased could not have recovered if he had left the defendant's employ on or before July 4, 1929, did not affect his right to recover at least for the period between July 5, 1929 and September 12, 1931, or for any aggravation of his malady, though already contracted.

Pieczonka, 89 F.2d at 356. Plaintiffs invoke a series of Appellate Division and federal cases to support the proposition that continuing exposures to hazardous substances are not time barred because the statute of limitations continues to accrue with each newly injurious exposure. See,

---

[9] Although this argument was only advanced with regard to plaintiffs' breach of warranty claims in written submissions to the Court, plaintiffs contended at oral argument that the date of last exposure rule also applied to both the strict liability and negligence claims. See 2/7/08 Tr. at 165-166.

10

e.g., Aranoff v. Winthrop Labs., 102 A.D.2d 736, 736-37, 476 N.Y.S.2d 571, 571 (1st Dep't. 1984); Cornell v. Exxon Corp., 162 A.D.2d, 892, 893-94, 558 N.Y.S.2d 647, 649 (3rd Dep't. 1990); Bikowicz v. Nedco Pharmacy, Inc., 130 A.D.2d 89, 92, 517 N.Y.S.2d 829, 832 (3rd Dep't. 1987); Riebow v. Quemetco, Inc., 148 A.D.2d 692, 693, 539 N.Y.S.2d 440, 441 (2d Dep't. 1989).

The Court of Appeals disavowed the "date of last exposure" rule, at least as applicable to plaintiffs' strict liability and negligence claims, in Snyder v. Town Insulation, Inc., 81 N.Y.2d 429, 433-435, 615 N.E.2d 999, 599 N.Y.S.2d 515 (1993). As plaintiffs have cited elsewhere in their briefs, that case specifically states that a cause of action accrues when all elements of the claim can be truthfully alleged in a complaint. Plaintiffs fail to address the decision's subsequent two paragraphs, however, which specifically identify and reject the application of the date of last exposure rule in toxic tort cases. Indeed, the Court of Appeals in Snyder specifically rejects the reasoning of one of the Appellate Division cases cited by plaintiffs in support of the date of last exposure theory, Cornell v. Exxon Corp., 162 A.D.2d at 892. See Snyder, 81 N.Y.2d at 433. As the New York Court of Appeals noted, applying the date of last exposure rule in these circumstances would effectively permit plaintiffs to postpone the running of the statute of limitations indefinitely. Id. at 435. It is true that statutes of limitations can have a harsh effect when an injury is not discovered until years after exposure, but the legislature has acted to ameliorate that effect through CPLR 214-c. Accordingly, plaintiffs' strict liability and negligence are dismissed pursuant to the six year statute of limitations of CPLR 213(1).[10]

---

[10] Plaintiffs also argue in two footnotes that CPLR § 214-c(4) could control their strict liability and negligence claims. 214-c(4) provides an exception to 214-c(2), extending the three-year period when plaintiffs allege that they did not know the cause of their injury at the time they discovered it or when the state of scientific or medical knowledge us such that plaintiffs could not have discovered the cause of their injury prior to the expiration of the three-year limitations period. Moore v. Smith Corona Corp., 175 A.D.2d 458, 459, 572 N.Y.S.2d 510, 511 (3d Dep't 1991); Annunziato v. City of New York, 164 Misc. 2d 682, 624 N.Y.S.2d 544, 546 (Sup. Ct. Richmond Cty.

11

**B. Breach of Warranty**

The parties agree that the only timely breach of warranty claims arise from the purchase of cigarettes within the four years prior to the filing of the complaint, i.e., cigarettes purchased after January 19, 2002. See Pl. Resp. Mem. at 8. Breach of warranty claims are governed by the four-year statute of limitations period set forth in N.Y. U.C.C. § 2-725, which provides that an "action for breach of any contract for sale must be commenced within four years after the cause of action has accrued." Accordingly, the statute of limitations has expired for all cigarettes purchased before January 19, 2002, but subsequent purchases remain timely.[11]

A claim for breach of the implied warranty of merchantability sounds in contract and is governed by N.Y. U.C.C. § 314. To succeed on such a claim, plaintiffs must establish that cigarettes purchased after January 19, 2002 were not reasonably fit for their intended purpose and that the defect was the proximate cause of plaintiffs' increased risk of lung cancer. See N.Y. U.C.C. § 314 cmt. 13; Philip M. Damashek, P.C. v. Wang Labs., Inc., 150 A.D.2d 151, 152, 540 N.Y.S. 2d 429, 431 (1st Dep't 1989); Finkelstein v. Chevron Chem. Co., 60 A.D.2d 640, 641, 400 N.Y.S.2d 548, 549 (2d Dep't 1977).

According to PMUSA, even assuming that cigarettes purchased after January 19, 2002 were not reasonably fit for their intended purpose, plaintiffs cannot establish that those cigarettes were the proximate cause of their injury because they faced an increased risk of lung cancer well

---

1995). Plaintiffs do not, and cannot, argue that they did not know smoking cigarettes was the cause of their increased risk of lung cancer. 214-c(4) is therefore inapplicable to their claims.

[11] Plaintiffs additionally argue that the date of last exposure rule previously discussed with regard to the strict liability and negligence claims allows recovery "for any aggravation or harm caused by the later, or timely, exposures." Id. The Court has already determined that Snyder eliminated the date of last exposure rule with regard to plaintiffs' tort claims, but need not determine whether such a rule is applicable to plaintiffs' breach of warranty claims. Whether or not this rule applies, plaintiffs would only be able to recover for the harm or aggravation suffered as a result of cigarettes purchased during the four timely years within the statute of limitations. Piezoncka, 89 F.2d at 356.

before January 19, 2002. At least for purposes of summary judgment, however, plaintiffs have set forth uncontradicted evidence that each plaintiff's risk from the use of Marlboro cigarettes is cumulative and may increase over time based upon a combination of age and ongoing cigarette use. See Pl. 56.1 Stmt. at ¶ 66. For instance, Dr. Alan Kassman, a PMUSA employee and expert witness for the defendant, testified that "overall, in a large population, there is a relationship between total exposure to smoke and overall disease incidence," and agreed that there is "consensus in the scientific community that the greater the total exposure to cigarette smoke, the greater the risk of lung cancer." Pl. 56.1 Stmt at ¶ 67, Ex. 18, Deposition Transcript of Alan Kassman, Ph.D., October 12, 2006, at 39:14-40:22, 42:12-25 (Testifying that "the greater the exposure to carcinogens, the greater the possibility of cancer[.]") Plaintiffs' expert, Dr. Albert Miller, M.D., a Board-certified Specialist in Internal Medicine and Pulmonary Medicine and a professor of clinical medicine at New York Medical College and Mount Sinai School of Medicine, opined that "[e]ach puff of a cigarette produces harm to the cells and tissues of the airways and lung, which enhances carcinogenic genetic mutations and loss of protective repair processes and impairs the body's ability to expel carcinogens." Pl. 56.1 Stmt. at ¶ 68, Ex. 2 at 2. Dr. Miller further stated that "[t]he last 3 years of smoking substantially contribute to the lung cancer risk by increasing the dose and duration of harmful particles and gases, and maintaining the destructive and pro-carcinogenic processes." Id. Further, plaintiffs' expert Dr. Alfredo Morabia, M.D., Ph.D., a Board-certified Specialist in Internal Medicine and a professor of epidemiology, opined that "[t]he last three years of smoking—or in the case of class members who have quit within the last year, their final two years of smoking—contributed significantly to the risk of lung cancer." Pl. 56.1 Stmt. at ¶ 69, Ex. 1 at 4, 8-12. In light of such evidence, summary judgment is not warranted on causation grounds.

Although this evidence is sufficient to defeat summary judgment on the issue of proximate causation, questions remain about the viability of plaintiffs' warranty claims. At oral argument PMUSA raised an additional ground for summary judgment not mentioned in PMUSA's moving papers. Specifically, PMUSA argued that plaintiffs' awareness of the risks and health hazards of cigarette smoking vitiates any implied warranty, stating:

> In the four years prior to this case being filed, all three class representatives were aware that cigarette smoking could cause an increased risk for lung cancer, and they were aware that they themselves were at increased risk for lung cancer.
>
> Based on this knowledge. . . there was no warranty left to breach. They knew full well the risk posed by smoking including the risk for lung cancer. They continued to buy cigarettes and to smoke them, despite that risk. There can be no implied warranty claim under the[se] circumstances[.]

2/7/08 Tr. at 148.

This argument has at least superficial appeal. In light of widespread knowledge of the risks of tobacco use, it is difficult to imagine that consumers failed to understand that the ordinary use of cigarettes entails a risk of contracting cancer. At least one New York court has concluded as much, holding that "no implied warranty of merchantability concerning the carcinogenic risks of tobacco can be found" for sales of Philip Morris cigarettes occurring after May 30, 1992, because "[t]he carcinogenic danger from cigarettes was common knowledge from at least 1969." See Inzerilla v. Am. Tobacco Co., Index No. 11754/96, 2000 WL 34016364 at *14 (N.Y. Sup. Ct. Oct. 27, 2000). The Court declines to rule on this issue, however, without first providing an opportunity to the parties to submit supplementary briefing addressing this issue. Plaintiffs did not respond to PMUSA's assertion at oral argument, and neither party addressed the issue in their briefs.[12] Accordingly, the Court invites supplementary briefing on

---

[12] Indeed, plaintiffs' response to PMUSA's summary judgment motion makes clear that they have not considered the effect of the named plaintiffs' knowledge or awareness of risk on their breach of warranty claims. Plaintiffs' merely argue that "such knowledge might arguably by [sic] germane to an affirmative defense such as comparative

14

the limited issue of whether plaintiffs' knowledge of the risks and dangers of tobacco use, or the common knowledge of smoking-related health effects, together with the warnings on all packs of cigarettes, prevent plaintiffs' from asserting breach of implied warranty claims with respect to the merchantability of cigarettes purchased after January 19, 2002.

### III. Medical Monitoring Under New York Law

As a final issue, the Court will consider whether plaintiffs should be permitted to amend the complaint in order to assert a cause of action for medical monitoring. Whether New York recognizes medical monitoring as an independent cause of action as distinguished from a remedy for an existing tort, has not been addressed by the New York Court of Appeals. New York Appellate Division courts have arrived at differing conclusions on this issue. Compare Askey v. Occidental Chem Corp., 102 A.D.2d 130, 135, 477, N.Y.S.2d 242, 244 (4th Dep't 1984) (finding that "there is a basis in law to sustain a claim for medical monitoring as an element of consequential damage"), with Osarczuk v. Assoc. Universities, Inc., 36 A.D.3d 872, 830 N.Y.S.2d 711 (2d Dep't 2007) (trial court erred in dismissing "cause of action seeking medical monitoring and other injunctive relief"). Federal courts applying New York law are similarly split. See, e.g., Gibbs v. E.I. DuPont De Nemours & Co., 876 F. Supp. 475, 479 (W.D.N.Y. 1995) ("Although the New York courts have not conclusively ruled on the availability of a claim for medical monitoring in the absence of present injury, I believe that Askey accurately represents a growing national acceptance of such a claim, and would be embraced by the New York Court of Appeals."); In re World Trade Center Disaster Site Litig., No. 21 MC 100, 2006 WL 3627760, at *3 (S.D.N.Y. Dec. 12, 2006) (Medical monitoring and fear of cancer "may perhaps be considered as equitable remedies, if causes of action are otherwise proved and if the

---

fault…[b]ut has nothing whatever to do logically or factually with the existence of a proximate cause relationship between [PMUSA's] post-January 2002 misconduct and the harm of which [p]laintiffs' complained." Def. Resp. Mem. at 11-12.

remedies are held to be appropriate and in accordance with the law. They do not constitute independent causes of action."). If such a cause of action is cognizable under New York law, the statute of limitations problems that required dismissal of plaintiffs' strict liability and negligence claims may be avoided if the availability of a particular remedy constitutes an essential element of the claim. See, e.g., Abbatiello v. Monsanto Co., 522 F. Supp.2d 524, 536-37 (S.D.N.Y. 2007). The Court considers this issue because leave to amend should be freely granted where justice so requires and if such amendment would not be futile.

Although the parties have already litigated the legal or equitable nature of the medical monitoring remedy, neither party has specifically addressed the issue of whether New York recognizes an independent medical monitoring cause of action. As such, if plaintiffs seek to amend the complaint to add such a claim, the Court requires supplementary briefing limited to the specific issue of whether the New York Court of Appeals would recognize an equitable cause of action for medical monitoring.

CONCLUSION

For the reasons described above, PMUSA's motion for summary judgment is granted in part. Plaintiffs' strict liability and negligence claims are dismissed as untimely, and plaintiffs' breach of warranty claims relating to sales occurring before January 19, 2002 are dismissed. PMUSA's motion for summary judgment on grounds of proximate causation is denied. The parties are directed to submit supplementary briefing on the limited issue of whether plaintiffs can establish breach of the implied warranty of merchantability. If plaintiffs seek to amend the complaint to assert a cause of action for medical monitoring, plaintiffs shall file a motion seeking leave to amend. The parties are directed to proceed according to the following briefing schedule:

1. PMUSA's Supplemental Brief for Summary Judgment on Breach of Warranty and Plaintiff's Motion to Amend the Complaint shall be due on March 3, 2010.

2. Plaintiffs' Response to PMUSA's Supplemental Brief on Breach of Warranty and PMUSA's Response to Plaintiffs' Motion to Amend the Complaint shall be due on March 24, 2010.

3. Reply papers on both motions, if any, shall be filed by April 7, 2010.

SO ORDERED.

Dated: Brooklyn, New York
       February 10, 2010

/s/ Hon. Carol Bagley Amon
_____
Carol Bagley Amon
United States District Judge